IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF NEW YORK

LAWRENCE MARSHAK & FLORIDA ENTERTAINMENT
MANAGEMENT CONCEPTS, INC
PLAINTIFFS  D0CKET #

- against -

ERIC SOMMERS
D EFENDANT

PLAINTIFF'S COMPLAINT

**LAW OFFICE OF LOWELL B. DAVIS**
**ATTORNEYS FOR PLAINTIFF**

**OFFICE AND POST OFFICE ADDRESS**

**18 JEFFREY LANE GREAT NECK NEW YORK**
516 746 7474
**lbd7479@cs.com**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT
E.D.N.Y.
*JANUARY 12, 2026*
BROOKLYN OFFICE
26-CV-157
JUDGE NICHOLAS G. GARAUFIS
MAGISTRATE JUDGE
MARCIA M. HENRY

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF NEW YORK

LAWRENCE MARSHAK & FLORIDA ENTERTAINMENT
MANAGEMENT CONCEPTS, INC

                              PLAINTIFFS _          D0CKET #

                         - against -

ERIC SOMMERS

                              D EFENDANT

                    PLAINTIFF'S COMPLAINT

COME NOW PLAINTIFF, who brings this action for treble damages against defer   t

Sommers ,

In support hereof would respectfully show the Court the following facts and n   .'s t

· wit:

1. Plaintiff is a resident of the State of New York County of Queens and is engaged in

the business of providing the entertainment services of the performing group, known as "Th

Drifters", whom originated in 1962 and feature amongst other songs, those of Leiber and S·   ·r.

2. The aforementioned entertainment services are featured in venues across the l   d

States.

3. Upon Information and belief, defendant is a resident of the State of New Hampshire

and maintains an office for the practice of law at 58 N. State Street, Concord N.H.

4. Defendant promotes himself as a member of the State Bar of New Hampshire,

5. His curriculum vitae does not disclose that he is a member of the New York Sta   ar,

but has been known to seek and be granted pro hoc vice on at least on one occasion th    vein

in representing the plaintiff herein in an Arbitration proceeding. In the United States District

1

Court for the Southern District of New York.

6. Defendant advertises and promotes his legal services as including specialties in "Arbitrations", " Intellectual property and entertainment law"

7. As an attorney representing a resident of the State of New York that attorney is subject to the rules and regulations governing the conduct of attorneys practicing law in the State of New York New York, including its Code of Professional Responsibility and its civil rules and procedures. The aforementioned extends to those admitted pro hoc vicci.

RELEVANT BACK GROUND

8. At all times relevant times prior to the commencement of this action plaintiff was engaged in the business of offering for sale, the entertainment services of "The Drifters", through lawful sources , for a period of time in excess of forty years.

9. Plaintiff's protagonist in providing those entertainment services similar to that of plaintiffs was Bill Pinkney who was a member of the inaugural version of "The Drifters" which disbanded in or about 1958.

10. Thereafter subsequently on or about 1959, the "Drifters" were reconstituted, by the plaintiff who added new members , new routines and new material. The new reconstituted "Drifters", continued to advertise their entertainment services exclusively as "The Drifters, featuring new songs such as those written by Leiber and Stoller and others.

11. The re-constituted group advertises and promotes its entertainment services exclusively as "The Drifters" and has managed by the plaintiff herein since 1961.

12. During Bill Pinkney's lifetime disputes did arise with Plaintiff as to plaintiff's right right to advertise and promote his entertainment services as "The Drifters", as opposed to Bill Pinckney who exclusively advertised and promoted his entertainment services as the "Original

2

Drifters", so as to distinguish his entertainment services from those of plaintiff.

13. Over time Bill Pinckney began to poach plaintiff's performance dates, and disparaged plaintiff's legal rights to promote his entertainment services exclusively as "The Drifters.",

14. In other instances Bill Pinckney, in advertising his entertainment services would add "doing business as the Drifters" to the "Original Drifters", so as to confuse venues purchasing "Bill Pinkney's, entertainment services with those of plaintiffs., so as to make believe that "Bill Pinkney's Original Drifters" were the same act as "The Drifters"

15. Plaintiff commenced legal actions seeking to enjoin, Bill Pinkney from providing his entertainment services as "The "The Drifters" as opposed to Bill Pinkney's  Original Drifters.

16.  Those disputes  were  resolved, and the terms of which were reduced to a so ordered stipulation of settlement of a lawsuit brought by Plaintiff in a court of law. See exhibit "A"

17. The aforementioned resolution provided  that: Bill Pinkney would cease and desist, as well as those under his control, from interfering with plaintiffs use of the performing name, "The "Drifters". It went on to provide that Bill Pinckney would continue to advertised and promote  his entertainment services as " "The Original Drifters " and/or  Bill Pinckney and the Original Drifters,"

18. During his lifetime Bill Pinkney never acquired any exclusive trademark rights in the trademark "The Drifters" marks at , common law, nor registered the name with the Office of Patents and trademarks.

19. Bill Pinckney died in 2007.

20.  Thereafter the  heirs of  Willie B. Pinkney continued to advertise and promote a performing group, as, "The Willie B. Pinkney's Drifters"

21.  However soon thereafter some  but not  all the heirs of Willie B. Pinckney began a

campaign publically asserting the exclusive right to use both the Willie B. Pinkney's Drifters and "The Drifters", and publically asserted to those venues whom regulariy purchased the entertainment services offered by plaintiff, as "The Drifters" that plaintiff had no lawful right to continue to use "The Drifter's name and furthermore that Plaintiff's use of the name "The "Drifters", to advertise and promote its entertainment services as it had for the past thirty years, was illegitimate and a fraud and demanded that they cease engaging the services of plaintiff and engage the entertainment services that they were offering or else they would risk facing a lawsuit and injunction.

22. Bill Pinkney's will was submitted to probate in the Sumter County Probate Court in South Carolina, probate Court, by his nine heirs. Some of the heirs claimed that Bill Pinkney had an ownership right in the name "Bill Pinckney's Original Drifters" and "The Drifters" .

23. To date accusations of fraud and mismanagement remain related to the use of ne performing names "The Bill Pinkney Drifters", by some of the nine heirs and "The Drifters", by others. The estate proceeding remain open. Some of the issues are pending before the South Carolina Third Circuit Court of Appeals. ,

24. Not surprisingly, the discord amongst the heirs have lead to disputes not only amongst themselves, related to the Estates ownership and control of the performing name. The Drifters",  and /or the Bill Pinckney's Drifters and/or "The Original Drifters and has become fertile ground for lawyers, such as the defendant to apply their trade. One of those lawyers is the defendant herein.

25. The estate's most recent assertion for which a variety of lawyers have been retained including the defendant herein was involved. Plaintiff's , continued use of use of the performing name ,"The Drifters", which predated Bill Pinkney's death.

4

26. Thereafter plaintiff on or about February 2, 2016 brought an arbitration proceeding venued in the State of New York, **wherein** plaintiff sought to enforce his prior agreement with Bill Pinkney providing that as between plaintiff and Bill Pinkney, the latter would continue to advertise and promote his entertainment services as "Bill Pinkney and the Original Drifters" and plaintiff as "The Drifters" and so as to enjoin Pinkney's heirs from interfering with the advertisement and promotion of plaintiff's performing group "The Drifters and enforce the aforementioned settlement agreement.

27. Prior to the initiation of such an arbitration proceeding, plaintiff was introduced to the defendant as,

a). an attorney licensed to practice law in the State of New York, which he was not, except on those occasions which he would be admitted pro hoc vice.

b) being a reasonably competent attorney, experienced in intellectual property generally, such as licensing; intellectual property) trademarks, arbitrations, and knowledgeable of,

c) The rules surrounding, New York practice and procedure, including meeting deadlines, diligence, the absence of conflicts of interest and d) capable of using reasonable care in determining and implementing a strategy to be followed to achieve the plaintiff's goals and benefits and not for the goals and benefits of third parties who were yet to be identified whose identity should have been disclosed from the very beginning.

28. In considering engaging defendant's services plaintiff reasonably presumed that the defendant would conduct himself in accordance with the Canons of ethics as required by law of New York State, including any conflict of interest, or even the appearance of which, which he failed to do.

29. Pursuant to the applicable cannons of ethics, plaintiff reasonably believed

defendant was to (a) reveal any conflict of interests with those of others and treat all information related to Plaintiff's representation as confidential and to zealously represent the plaintiff's interests, which he clearly failed to do as hereinafter set forth..

24. While financial arrangements were agreed to no written retainer was entered into.

25. The Arbitration proceeding by plaintiff was dismissed by the Court.

26. An appeal was discussed but defendant generally counseled against such a remedy and promoted alternative remedies, due to his failure to order transcripts of the entire proceeding making it impossible to perfect such an appeal as well as missing the deadline to file a timely notice of appeal.

27. It was at this time that defendant finally disclosed by defendant that had withheld disclosing that he had a substantial conflict of interest between plaintiff and Terry Woods Bill Pinkney's son and heir, that being that while he was representing me he was simultaneously representing Terry Woods, in the probate of his father's will. who was seeking to be appointed as the fiduciary in charge of his father's estate and in a position to grant me a license to continue using the "Drifters" name to advertise and promote my entertainment services with with interference as I hade been doing for more than a decade. Had defendant disclosed such a conflict I could have avoided, at least temporally withheld filing a an arbitration proceeding at a substantial cost in paying defendant's legal fees which were substantial and seeking an alternative means, at a substantially lesser cost.

28. Pursuant to the applicable cannons of ethics, plaintiff reasonably believed defendant was to (a) treat all information related to Plaintiff's representation as confidential and to zealously represent the plaintiff's interests, which he clearly failed to do. Clearly a remedy preferable to Defendant by withholding from me that he was simultaneously representing an

6

heir to Bill Pinkney's estate was clearly a conflict of interest that should have been disclosed.

29. Immediately at the conclusion of the arbitration, the arbitrator returned his verdict adverse to plaintiff.

30. Immediately at the conclusion of the arbitration, which was decided adverse to plaintiff, defendant seemed not to be concerned, defendant admitted to failing to disclose that he was guilty of failing to disclose that he had a conflict of interest , to wit: in that at the same time as representing me he was also representing one of Pinckney's heirs his son, Terry Woods, who hired defendant's services for a fee, seeking to become the fiduciary of the estate of his father Bill PInkney, and further disclosed that should Terry Woods to become the fiduciary of his father's estate, which defendant disclosed as "Pro Forma" Terry Woods would have the authority to grant plaintiff a license for me continue to provide entertainment services a Th' Drifters", mooting the need for me to have

a) prosecute an arbitration proceeding in the first place at a cost of substantial legal fees

b) to prepare an appeal that was never filed because of defendant's failure to timely file a notice of appeal, and secure the necessary transcripts of the proceedings to file such an appeal

31. It is impossible, even with hindsight to consider how that knowledge, would have affected my decision to hire the defendant in the first place, which is exactly the purpos of including in the Canons of Ethics a duty upon an attorney to reveal such a conflict of interest regardless of the ultimate outcome which should not even be considered in whether or not an attorney should be sanctioned for having violated one of the Canons of Ethics.

32. Had I been advised of defendant's relationship with Terry Woods in the first instance all that was necessary for me to do was to wait to see if the defendant was successful in having Terry Woods appointed the fiduciary of his father's estate, which he was and have defendant

7

negotiate a license allowing me to continue to advertise and promote my entertainment s~·ice,

as "The Drifters", free from interference from Pinckney's heirs rather than pay defendant's

substantial legal fees, which in hindsight included Terry Woods legal fees due the defendant,

at an approximate cost of _____ as well as pay Terry Woods legal fees due defendant for

representing Terry Woods in negotiating a license agreement with myself.

33. At the time of negotiating the license agreement, terry Woods was not present, been on

""Zoom", myself at defendant's office with another client of defendant with whom I was

acquainted and did business with and the defendant himself in another office alleged to be

engaged in other important legal work, clearly to avoid erasing any doubt that defendant was

representing both myself and Terry Woods at the same time.

34. The proposed license agreement was poorly drafted, in hindsight to observate the

fact I may be responsible to pay legal fees to defendant and or other lawyers to represent Terry

Woods' when necessary to protect Terry Woods rights to continue to license the performing

name "The Drifters" for the benefit of Terry Woods; and any other future legal fees to defendant

for challenges by third parties seeking to challenge Terry Woods' right to grant me the license to

advertise and promote my entertainment service as "The Drifters",

35. Although the law is clear that inclusion of the phrase "May vs Shall", to pay any other

legal fees due defendant or any other attorney's representing third parties challenging "Terry

Woods" right to license to me the use of The "The Drifters" name to advertise and promote my

entertainment services, is discretionary, Terry Wood and his attorney's other than defendant

believe otherwise.

36. As a direct cause of the inclusion of such a phrase, I am currently engaged in a lawsuit

with Terry Woods in the United States District Court for the District of South Carolina,

8

challenging what I see as not a lifetime annuity to the defendant but an obligation that arises when it becomes necessary to protect the license agreement between myself and Terry Woods, from third party attacks.

36. Presently Woods is seeking to recover from me in that pending lawsuit is I n excess of $150,000 Dollars.

Wherefore Plaintiff seeks to recover damages in an amount in excess of a $100,00.00 Dollars together with costs and disbursements.

Larry Marshak, being duly sworn deposes and says: I am the plaintiff in the above captioned action. I have read the attached complaint and know the contents there... I verify that the statements contained therein are true to my knowledge, except th... that are alleged upon information and belief and as to those matters that I believe to be true. My belief as to those matters not stated upon knowledge, are based upon my review of documents related to the arbitration referenced herein, the license agreement referenced herein and other documents related to prior proceedings between the parties

_Larry Marshak_

LARRY MARSHAK

Sworn to me this 12th day of January 2026

LOWELL B. DAVIS
NOTARY PUBLIC, STATE OF NEW YORK
NO. 02DA4755167
QUALIFIED IN NASSAU COUNTY
TERM EXPIRES OCTOBER 31, 2026

_Lowell B. Davis_